# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DAMON GRAHAM

      vs.                              CR No. 13-132-ML

UNITED STATES OF AMERICA

## MEMORANDUM AND ORDER

Pending before the Court is a Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 USC § 2255 (Doc. #150) ("Motion") filed by Petitioner Damon Graham ("Petitioner" or "Graham"). The Government has filed an opposition to the Motion (Doc. #154) ("Opposition"), to which Graham filed a response (Doc. #155) ("Response"). No hearing is necessary.

## FACTUAL BACKGROUND AND TRAVEL

Graham was arrested on July 18, 2013, pursuant to a Criminal Complaint filed that day. An Indictment was filed on September 11, 2013, charging Graham with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2; conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846; possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846; and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 18, 2013, Graham was arraigned on the Indictment. Following a December 6, 2013, hearing, the Court granted Graham's motion to proceed *pro se* and appointed Attorney Terence E. Livingston as stand-by counsel. The Government filed an Information Charging Prior Convictions, pursuant to 21 U.S.C. § 851, on

January 6, 2014. A Superseding Indictment, retaining the counts contained in the original Indictment and adding charges of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), was filed on February 19, 2014. Graham was arraigned on the Superseding Indictment on February 26, 2014.

On April 23, 2014, Graham pled guilty to six counts of the Superseding Indictment. The Government made an oral motion to dismiss the charges of possession of a firearm in furtherance of a drug trafficking crime, which the Court granted. Graham subsequently filed a motion to withdraw his guilty plea, which was denied at a July 17, 2014, hearing. Graham was sentenced on October 17, 2014, to a term of imprisonment of 186 months, to be followed by eight years of supervised release. Graham filed a Notice of Appeal that day. Judgment entered on October 22, 2014. On October 27, 2015, the Court of Appeals denied Graham's "frivolous" appeal. The appellate court's Mandate issued on November 18, 2015. Graham did not seek further review by the United States Supreme Court.

Graham timely filed the instant § 2255 Motion on December 28, 2016.[1] On March 30, 2017, the Government filed an Opposition to the Motion. Graham filed a Response on May 19, 2017.

## DISCUSSION

I.     Section 2255 and AEDPA

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, a constitutional error, or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185 (1979)("[A]n error of law does not

---

[1] The Motion is dated December 28, 2016, and is deemed filed on that date. See Houston v. Lack, 487 U.S. 266, 270 (1988)(concluding that pleadings are deemed filed on the date prisoner relinquishes control over documents).

provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.")(internal quotation marks omitted).

Section 2255 states that:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which "imposed significant new constraints on proceedings under section 2255." Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008)(footnote omitted). "Some of these constraints were temporal; for example, AEDPA established a one-year statute of limitations for filing a section 2255 petition." Id. (citing 28 U.S.C. § 2255(f)). Others were numerical, requiring a petitioner to obtain preclearance from the circuit court before filing a second or successive petition. Id. (citing 28 U.S. § 2255(h)).

II.     Strickland

A defendant who claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel must demonstrate:

(1)     that his counsel's performance fell below an objective standard of reasonableness; and

(2)     a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010)(same). In assessing the adequacy of counsel's performance, a defendant "'must

identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690); see also Strickland, 466 U.S. at 689 (noting that the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ..."). To show prejudice under Strickland, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. In making the prejudice assessment, the court focuses on the "fundamental fairness of the proceeding." Manon, 608 F.3d at 131; see also Strickland, 466 U.S. at 696. "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 106 (D.P.R. 2000)("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

The same principles apply in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Hill Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla v. Kentucky, 559 U.S. 356, 371 n.12 (2010)("In Hill, the Court recognized–for the first time–that Strickland

applies to advice respecting a guilty plea.").  The first prong of the <u>Strickland</u> test is nothing more

than a restatement of the standard of attorney competence described above.  <u>Hill</u>, 474 U.S. at 58.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words,  in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Id.</u> at 59 ; <u>see also</u> <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012)("In the context of pleas a defendant

must show the outcome of the plea process would have been different with competent advice."); <u>id.</u>

at 164 ("In these circumstances a defendant must show that but for the ineffective advice of counsel

there is a reasonable probability that the plea offer would have been presented to the court (i.e., that

the defendant would have accepted the plea and the prosecution would not have withdrawn it in light

of intervening circumstances), that the court would have accepted its terms, and that the conviction

or sentence, or both, under the offer's terms would have been less severe than under the judgment

and sentence that in fact were imposed.").  "To show prejudice from ineffective assistance of counsel

where a plea offer has lapsed or been rejected because of counsel's deficient performance,

defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer

had they been afforded effective assistance of counsel."  <u>Missouri v. Frye</u>, 566 U.S. 133, 147 (2012).

The <u>Hill</u> Court reiterated that, as stated in <u>Strickland</u>, "these predictions of the outcome at a possible

trial, where necessary, should be made objectively ...."  474 U.S. at 59-60; <u>see also</u> <u>Padilla</u>, 559 U.S.

at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that

a decision to reject the plea bargain would have been rational under the circumstances").

III.     Analysis

    A.     Ineffective assistance of counsel

Graham alleges that he received ineffective assistance of counsel during the pre-trial stages of the proceedings.

1.      Failure to file motion to suppress

Graham argues that counsel, prior to being appointed stand-by counsel, "fail[ed] to research and advance a meritorious Fourth Amendment claim that has prejudiced Petitioner."  Response at 7; see also id. at 4; Motion at 7.  Specifically, Graham faults counsel for failing to file a motion to suppress evidence seized as a result of a dog sniff outside a storage unit.  Motion at 7-8; Response at 5-7.  Although a warrant was eventually sought and obtained to search the contents of the storage unit, Graham contends that the "search and violation" occurred prior to the issuance of the search warrant.  Motion at 9.

In Kimmelman v. Morrison, 477 U.S. 365 (1986), the Supreme Court stated that:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Id. at 375; see also United States v. Mercedes-de la Cruz, 787 F.3d 61, 67 (1st Cir. 2015)(quoting Kimmelman).  Because Graham cannot show that his Fourth Amendment claim is meritorious, in other words that a motion to suppress would have been successful, the first portion of his ineffective assistance claim fails.  This is because a dog sniff outside a remote storage unit does not constitute a search within the meaning of the Fourth Amendment.  See United States v. Place, 462 U.S. 696, 707 (1983)(concluding that "the particular course of investigation that the agents intended to pursue here–exposure of respondent's luggage, which was located in a public place, to a trained canine–did not constitute a 'search' within the meaning of the Fourth Amendment"); see also United States v.

Jacobsen, 466 U.S. 109, 123 (1984)(reiterating Place's holding that "subjecting luggage to a 'sniff test' by a trained narcotics detection dog was not a 'search' within the meaning of the Fourth Amendment"); United States v. Rodriguez-Morales, 929 F.2d 780, 788 (1st Cir. 1991)(holding that "the canine sniff of the exterior of a vehicle which is legitimately within the custody of the police is not a search within the meaning of the fourth amendment; and that subjecting the exterior of such a motor vehicle to the olfactory genius of a drug detection dog does not infringe upon the vehicle owner's fourth amendment rights"). Further, "upon receiving a positive indication that drugs were present, the authorities had probable cause to procure a warrant and carry out the thoroughgoing search of the automobile's interior which disclosed the cocaine cache." Rodriguez-Morales, 929 F.2d at 789.

Graham relies on Florida v. Jardines, 133 S.Ct. 1409 (2013), for his argument that a dog sniff is not always a search. Response at 5. Jardines, however, is distinguishable. In Jardines, the Supreme Court considered "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of a home is a 'search' within the meaning of the Fourth Amendment." 133 S.Ct. at 1413. The Court found that it was. Id. at 1417-1418 ("The government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment."). Here, however, the drug-sniffing dog was nowhere near Graham's home or immediate surroundings. The officers were lawfully on the premises of the storage facility pursuant to an administrative subpoena. Motion, Ex. 2 (Narrative for Patrol of Detective Kevin R. Bosquet) at 2. The canine never entered the storage unit. See id., Ex. 1 at 1 (Narrative for Patrol of Officer Matthew C. Riley)(noting that he and K-9 Goro performed exterior sniffs of storage unit); id., Ex. 2 at 2 (noting that Officer Riley "walked his K-9 (Goro) by the storage unit"). The storage

unit was not entered until a warrant was obtained to do so.  See id., Ex. 1 at 1; id., Ex. 2 at 2.  Therefore, Jardines is inapposite.

Graham argues that the cases cited by the Government pre-date Jardines and implies that they are, therefore, no longer good law.  Response at 5.  However, post-Jardines, courts have continued to hold that dog sniffs not involving homes or curtilage are not searches within the meaning of the Fourth Amendment.  See, e.g., United States v. Centeno-Gonzalez, 177 F. Supp. 3d 721, 731 (D.P.R. 2016)(holding that firearms-detection dog sniff of defendant's vehicle was not search requiring probable cause and denying defendant's motion to suppress); United States v. Bates, 100 F. Supp. 3d 77, 86 (D. Mass. 2015)(denying motion to suppress because "[t]here is no expectation of privacy in not having dog sniffs at mail facilities"); United States v. Taylor, 979 F. Supp. 2d 865, 882 (S.D. Ind. 2013) (holding that because dog sniff of storage unit "did not constitute a Fourth Amendment search, it does not provide a basis to suppress the evidence subsequently discovered therein").

In Taylor, the defendant argued that the evidence found in the storage unit should be suppressed "because the dog sniff that revealed the presence of narcotics in the storage unit, which allowed law enforcement to obtain the search warrant, constituted an illegal Fourth Amendment search."  979 F. Supp. 2d at 879.  The Taylor court rejected the defendant's argument, identical to the argument Graham makes here, that Jardines "undermined the once common belief," Response at 5, that a dog sniff was not a search, 979 F. Supp. 2d at 879-81; see also id. at 880 ("Neither the Jardines majority's rationale, nor that in Justice Kagan's concurrence, support Mr. Taylor's position that the dog sniff in the instant case was a Fourth Amendment search.  The majority's opinion was driven entirely by the fact that the dog sniff occurred in the curtilage of the defendant's home, which exceeded the scope of the limited license law enforcement had to enter the property.  This case, of

course, does not implicate this concern, as the dog sniff occurred on Hoosier Storage's property immediately outside the storage unit rented by Mr. Taylor."). The Taylor court's reasoning is equally applicable in the instant case.

Graham also relies on the Supreme Court's decision in Katz v. United States, 389 U.S. 347 (1967), to argue that he had a "reasonable expectation of privacy" in his effects, which were contained in the storage unit. Motion at 11; see also Response at 4. This contention is easily disposed of. "The Fourth Amendment 'protects people from unreasonable government intrusions into their legitimate expectations of privacy.'" Place, 426 U.S. at 706-07 (quoting United States v. Chadwick, 433 U.S. 1, 7 (1977)); see also Katz, 389 U.S. at 351. However,

> Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment. We have held that any interest in possessing contraband cannot be deemed legitimate, and thus, governmental conduct that *only* reveals the possession of contraband compromises no legitimate privacy interest. This is because the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable. In United States v. Place, we treated a canine sniff by a well-trained narcotics-detection dog as *sui generis* because it discloses only the presence or absence of narcotics, a contraband item.

Illinois v. Caballes, 543 U.S. 405, 408-09 (2005)(internal citations and quotation marks omitted); see also Jacobsen, 466 U.S. at 123 ("Congress has decided–and there is no question about its power to do so–to treat the interest in 'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest.").

Accordingly, Graham had no legitimate privacy interest in the contents of the storage unit, and the dog sniff which revealed the presence of contraband was not an unconstitutional search. It necessarily follows that, had a motion to suppress been filed, it would not have succeeded and,

therefore, counsel was not ineffective for choosing not to do so.  See Kimmelman, 477 U.S. at 375.

Moreover, for the same reason, Graham has not demonstrated prejudice under Strickland.  See id.;

see also Strickland, 466 U.S. at 694, 696.

        2.       Failure to properly advise regarding plea

In addition, Graham argues that "[b]y the advice provided to Petitioner during the plea

bargain stage by standby counsel, this Petitioner was under the impression that the right to challenge

prior litigated pretrial motions that were denied still existed with an open plea of guilty in court."

Motion at 17; see also id. at 18.  Further,

> Petitioner avers that had it not been for standby counsel's unprofessional error ...
> Petitioner would have at a minim[um] sought to secure a conditional plea to retain
> the rights to challenge the issues or motions this Petitioner felt had validity in the
> appeal court because of their denial in the lower court.  If no such agreement was
> obtained, them Petitioner would of [sic] had no choice but to maintain his
> presumption of innocence and "insisted on going to trial."

Id. at 19-20 (quoting Hill, 474 U.S. at 59).

As noted above, on December 6, 2013, the Court granted Graham's motion to proceed *pro

se* and appointed stand-by counsel.  See Transcript of December 6, 2013, hearing on Motion to

Proceed *Pro Se* (ECF No. 132) ("12/6/13 Hrng. Tr.") at 18.  Prior to granting the motion, the Court

conducted a colloquy to ensure that Graham's waiver of his Sixth Amendment right to counsel was

knowingly and intelligently made.  See Faretta v. California, 422 U.S. 806, 835 (1975).  The Court

ascertained Graham's educational level, lack of legal training, and awareness of the seriousness of

the charges and the length of sentence he was facing, told him that he would be required to adhere

to courtroom procedures and rules of evidence, asked both Graham and counsel if they had discussed

the matter, and warned Graham several times of the dangers of proceeding *pro se*.  See 12/6/13 Hrng.

Tr. at 4-14.  Significantly, the Court twice cautioned Graham that if he made mistakes or was unsuccessful in representing himself that he would have only himself to blame.  Id. at 18.

At that hearing, the Government advised the Court that it had been in discussions with Attorney Livingston about a potential plea.  Id. at 4.  At a subsequent hearing, the following discussion occurred:

> THE COURT:    The record should reflect that it is now 11:10 a.m.  This matter was scheduled for hearing on the Defendant Damon Graham's motion to suppress certain evidence.
> Upon being advised by counsel that Mr. Graham was continuing in his discussions with the Government regarding the negotiation of a plea agreement, the Court deferred hearing the matter to give the parties the opportunity to continue those discussions.
> Would someone please tell me where we are.  I'm prepared to either take a plea or go forward on the motion to suppress.
>
> MS. CHIN:    Your honor, the Government has provided Mr. Graham with a revised plea agreement.  One of the terms is not acceptable to him, and so he has not signed it.
>
> THE COURT:    Then I guess we're going to trial.  Is that right, Mr. Graham?
>
> THE DEFENDANT:    Yeah.  I apologize for the inconvenience, your Honor.  You know, we tried to work it out.  I just, you know, was hoping that, you know, the agreement would have been better.  I would have accepted the plea; but the language, I didn't like the language.  So I guess we don't have no [sic] choice.
>
> THE COURT:    Well, Mr. Graham, I told you you had two choices.  We can proceed to trial.  You can take your chances at trial.  And you filed a motion to suppress.  Are you prepared to go forward on that?
>
> THE DEFENDANT:    Yes, your Honor.

Transcript of April 16, 2014, hearing on Motion to Suppress (ECF No. 134) ("4/16/14 Hrng. Tr.") at 3-4; see also Motion, Ex. 5.  According to Graham, the "language" to which he objected was the appeal waiver clause in the proposed plea agreement.  Motion at 5.  Before the hearing was to begin,

the Assistant United States Attorney ("AUSA") "informed this Petitioner and stand-by counsel that her office would not remove the appeal waiver as it was office policy to include the waiver in all plea agreements." Id.

At some point, Graham, apparently relying on the allegedly erroneous advice provided by stand-by counsel, changed his mind and decided to plead guilty, id. at 5-6, and filed a Notice of Intention to Plead Guilty (ECF No. 94), see Docket. As the Court noted in open court, there was no formal written plea agreement. Transcript of April 23, 2014, Change of Plea hearing (ECF No. 98) ("4/23/14 Plea Hrng. Tr.") at 2, 8; see also Motion, Ex. 4. The only agreement was that, assuming Graham pled guilty, the Government would move to dismiss the § 924(c) charges from the Superseding Indictment. 4/23/14 Plea Hrng. Tr. at 8; see also id. at 2; Motion, Ex. 4. The Court thoroughly questioned Graham regarding his understanding of the nature of the proceedings, the consequences of entering a guilty plea, and the voluntariness of his plea, after which Graham admitted to the facts the Government would have presented at trial. The Court accepted Graham's guilty plea. 4/23/14 Plea Hrng. Tr. at 4-31.

Graham claims that he received ineffective assistance of counsel because stand-by counsel provided "incompetent advice" regarding the consequences of pleading guilty. Motion at 16. But for the "misinformation" provided by stand-by counsel, Graham states, he would have pursued a conditional plea or gone to trial "in order to reserve full appellate rights to challenge every issue Petitioner viewed as being mistakenly and incorrectly denied by the Court." Id. at 20.

A defendant has a constitutional right to represent himself. See Faretta, 422 U.S. at 818-19; see also McKaskle v. Wiggins, 465 U.S. 168, 170 (1984). The court may, in its discretion, appoint stand-by counsel to assist the pro se defendant, even if the defendant objects. McKeskle, 465 U.S.

at 170, 184; United States v. Kneeland, 148 F.3d 6, 13 (1st Cir. 1998)("Although a trial court may appoint standby counsel against a defendant's wishes, it is not required to do so.")(internal citations omitted). There is, however, no constitutional right to stand-by counsel. Kneeland, 148 F.3d at 13 ("a pro se defendant does not enjoy an absolute right to standby counsel"); accord Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006)(concluding that "there is no right to standby counsel"). Absent a constitutional right to stand-by counsel, there can be no constitutional right to effective assistance of stand-by counsel. United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998)("As we held in Schmidt, without a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel."); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)("Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective."); accord United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992)("This court knows of no constitutional right to effective assistance of standby counsel."); Thomas v. Warden, N.H. State Prison, Civil No. 1:07-cv-385-JL, 2012 WL 959382, at *12 (D.N.H. Mar. 21, 2012)("since ... Thomas validly decided to proceed pro se, he had no right to the 'effective assistance' of standby counsel").

Although in Schmidt the Second Circuit left the door open for an ineffective assistance of stand-by counsel claim "in a case where standby counsel held that title in name only and, in fact, acted as the defendant's lawyer throughout the proceedings," 105 F.3d at 90, the court held that the case at bar was not such a case, id. The same is true here. Graham argued his own pre-trial motions, questioned witnesses at hearings, and made his own arguments during hearings. See, e.g., 4/16/14 Hrng. Tr. at 18-25, 31-32; Opposition, Ex. A (Transcript of October 17, 2014, Sentencing Hearing) at 12. At no point did Graham relinquish his Faretta right to self-representation. See Simpson v.

Battaglia, 458 F.3d 585, 597 (7th Cir. 2006)("Therefore, the inadequacy of standby counsel's performance, without the defendant's relinquishment of his Faretta right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment.").

Moreover, even if Graham were entitled to the effective assistance of stand-by counsel, he cannot claim to have been prejudiced by Attorney Livingston's advice. Specifically, he has not shown that the outcome of the plea process would have been different. Lafler, 566 U.S. at 163. It is clear that Graham would not been successful in negotiating a "conditional plea," Motion at 20, apparently meaning a plea agreement with no appeal waiver provision, as the AUSA had already informed him that her office would not agree to such a plea, id. at 5. Even without a formal plea agreement in place, the Government agreed to dismiss the additional firearms charges. 4/23/14 Hrng. Tr. at 2, 8. Graham has not shown that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59, especially given the additional penalties he would have faced if found guilty on the § 942 charges. Further, the Court is not convinced that a decision to reject the plea would have been "rational under the circumstances." See Padilla, 599 U.S. at 372.

Based on the foregoing, the Court rejects Graham's claim that he received ineffective assistance of counsel in its entirety.

B.     Constitutionality of sentence

Graham raises a number of challenges to the constitutionality of his sentence. For convenience, the Court groups these claims as they are addressed in the Government's memorandum.

1.     Determination that Graham was career offender

Graham argues that the "advisory sentencing guideline range was unconstitutionally

enhanced because a state conviction for 'Sale of Narcotics' cannot qualify as a career offender predicate requiring two felony convictions of either a crime of violence or a controlled substance offense." Motion at 21 (citing U.S.S.G. §4B1.1).[2] According to Graham, the Connecticut statute at issue, Conn. Gen. Stat. § 21a-277(b), is "broader than the federal definition under § 4B1.2(b) of the U.S.S.G.," id. at 22, and, therefore, cannot be used to enhance his sentence, see id. at 22-23.

In order to determine whether a conviction qualifies as a prior conviction under §4B1.1,[3] courts have utilized the analysis used by the Supreme Court in the context of predicate offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e). See, e.g., United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008). Under the "categorical approach" a court "look[s] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600 (1990); see also Descamps v. United States, 133 S.Ct. 2276, 2283 (2013); United States v. Carrigan, 724 F.3d 39, 48 (1st Cir. 2013)(describing categorical approach). If the statute has the same elements as the "generic" crime, or defines the crime more

_____

[2] Section 4B1.1 provides in relevant part that:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a). The third subsection of section is at issue in this case.

[3] Section §4B1.2(b) defines "controlled substance offense" as follows:

The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

-15-

narrowly, "there is no problem, because the conviction necessarily implies that the defendant has been found guilty of a [predicate offense]," <u>Taylor.</u> 495 U.S. at 599; <u>see also Descamps</u>, 133 S.Ct. at 2283.

Some statutes have a more complicated structure, thereby making the comparison of elements harder. <u>Mathis v. United States</u>, 136 S.Ct. 2243, 2249 (2016). For example, the "statute may list elements in the alternative, and thereby define multiple crimes." <u>Id.</u> The Supreme Court therefore "recognized a narrow exception to this 'categorical approach' only for a 'narrow range of cases where a jury ... was actually required to find all the elements of' the generic offense." <u>Shepard v. United States</u>, 544 U.S. 13, 17(2005)(quoting <u>Taylor</u>, 495 U.S. at 602). Under the "modified categorical approach," the court asks whether the Government has demonstrated that the plea "necessarily" rested on a fact identifying the conviction as a predicate offense. <u>Id.</u> at 21-22. The modified categorical approach allows the court to look at a limited class of documents–frequently called "<u>Shepard</u>-approved" documents–to determine the defendant's relevant offense. <u>Id.</u> at 20, 24. In a case such as Graham's, where his conviction resulted from a plea, the basis for the charge may be shown by "a transcript of [a] plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." <u>Id.</u> at 20; <u>see also id.</u> at 21-22 ("With such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the [offense] as generic.") . Here, the Government has produced the Information and docket sheet for Graham's Connecticut case as well as the transcript of the plea hearing during which Graham pled guilty to the Connecticut offense. Answer at 13; <u>id.</u>, Ex. B, C.

In <u>Savage</u>, the Court of Appeals for the Second Circuit addressed Conn. Gen. Stat. § 21a-277[4]

and concluded that "a conviction under the Connecticut Statute cannot categorically qualify as a

'controlled substance offense' within the meaning of Guidelines § 4B1.2(b) because the Connecticut

Statute criminalizes some conduct that falls outside the Guidelines' definition." 542 F.3d at 964-65.

The court based its conclusion on a comparison of the elements of the statute and the definition of

"controlled substance offense" in §4B1.2(b). <u>Id.</u> at 961. The Second Circuit's analysis comports

with that of the Supreme Court described above. Although not binding on this Court, the Court

accepts the <u>Savage</u> decision as persuasive authority that Graham's Connecticut conviction does not

categorically qualify as a predicate offense.

The <u>Savage</u> Court next turned to the modified categorical approach, applying <u>Shepard</u> to

determine whether the defendant's plea "necessarily" rested on the elements of a predicate offense.

<u>Id.</u> at 966. Because the defendant had entered an <u>Alford</u>[5] plea, he "did not, by design, confirm the

---

[4] Conn. Gen. Stat. § 21a-277(a) provides, in relevant part:

Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives **or** administers to another person any controlled substance ... for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned ....

Conn. Gen. Stat. § 21a-277(a) (bold added). The statute goes on to list penalties for subsequent offenses. <u>Id.</u> In addition, "sale" is defined as "any form of delivery, which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee[.]" <u>Id.</u> § 21a-240(50).
　　Graham argues that, pursuant to <u>Mathis</u>, the statute lists different ways, or "means," to commit the same offense, not elements constituting different crimes. <u>See</u> Motion at 24-25 (citing, inter alia, <u>Mathis</u>, 136 S.Ct. at 2249). <u>Mathis</u> distinguished between a statute that "lists multiple elements disjunctively" and "one that enumerates various factual means of committing a single element." 136 U.S. at 2249. It is clear from the use of the disjunctive "or" in the Connecticut statute that it "list[s] elements in the alternative ... thereby defin[ing] multiple crimes." <u>Id.</u>

[5] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

factual basis for his plea." Id.; see also id. at 967 ("[A]lthough everybody understood that the State alleged that Savage exchanged drugs for money, nothing in the plea colloquy established with certainty that Savage necessarily pleaded guilty to this fact."). Nor had the State shown that the charge had been narrowed to its predicate limits. Id. at 967. On the facts of the case, the court determined that the conviction did not qualify as a controlled substance offense.

Although Savage forms the basis for Graham's argument, the situation here is different. Graham did not enter an Alford plea. The plea colloquy demonstrates that Graham admitted to facts which necessarily qualify as a "controlled substance offense" as defined in §4B1.2(b). See Shepard, 544 U.S. at 26. The court stated the charges against Graham: "Possession of narcotics with intent to sell." Opposition, Ex. C at 6. Next, the court asked Graham "what is your plea, guilty or not guilty," id. at 6-7, and Graham responded: "Guilty," id. at 7. The State then recited the facts of the case as follows:

> It's an event occurring on 3/6/98, 7 p.m., at 165 Chapel Street, the second floor. Police were at that location to execute a search and seizure warrant. When they arrived, the door was wide open and the police officers heard yelling and went inside. They saw the defendant Pierre Lee pointing a .40 caliber Glock at two other individuals in the kitchen. Upon speaking to the two individuals in the kitchen, they indicated that the defendant Lee and defendant Graham were trying to rob them. Let's see. The defendant Lee and defendant Graham entered. Defendant Graham had the gun first. After they searched one of the victims - - I'm sorry. After Graham searched one of the victims, Lee took the gun from Graham and pointed it at them and was screaming for them to turn over narcotics. Search incident to arrest, your honor. Found on Lee's person was 20 bags of a white rock-like substance which subsequently field tested positive for narcotics and $442. Both defendants did not have a pistol permit.

Id. at 7-8. After questioning both Graham and his co-defendant to ascertain that their pleas were being entered knowingly and voluntarily, id. at 8-13, the court asked:

> THE COURT:      All right. You heard the facts recited by the prosecutor.

Were they substantially accurate?  That is accurate for the most part.  First Mr. Lee.

> MR. LEE:　　　　Yes.
>
> THE COURT:　　And Mr. Graham.
>
> MR. GRAHAM:　Yes, sir.

Id. at 12.

It is clear from the above that the Government has shown that the plea necessarily rested on a fact identifying the conviction as a prior conviction for purposes of §4B1.2(b).  Shepard, 544 U.S. at 24.  Graham pled guilty to possession with intent to sell narcotics.  Unlike Savage, he admitted to facts that formed the basis for the offense.  Graham's claim that his state conviction did not constitute a "controlled substance offense" within the meaning of §4B1.2(b), therefore, fails.

> 2.　　　　Vagueness of 21 U.S.C. § 851

Graham next contends that 21 U.S.C. § 851[6] is "unconstitutionally vague, and deprives him of liberty without due process of law."  Motion at 29.  According to Graham, "[t]hough  § 851 puts Petitioner on notice that  based on a prior conviction, he is the subject of increased punishment, it fails to define the term prior conviction and specifically fails to provide notice that a prior conviction is a felony drug offense conviction for the purpose of  § 841(b)(1) et seq., and therefore invites

---

[6] Section 851 provides, in relevant part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an Information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. ...

21 U.S.C. § 851(a)(1).

arbitrary enforcement." Id. (citing Skilling v. United States, 561 U.S. 358 (2010)); see also Response at 18 ("Petitioner's sentence violates due process of law premised on the fact that § 851 fails to define the term 'prior conviction' which leads the Court to apply that statute arbitrarily when determining the element 'felony drug offense.'").[7]

As noted above, on January 6, 2014, the Government filed an Information Charging Prior Convictions (ECF No. 36) ("Information") pursuant to 21 U.S.C. § 851. "That Information charged that defendant had previously been convicted of a felony drug offense and thereby increased the statutory minimum sentence the defendant faced from 5 to 10 years." Opposition at 15. The Information listed three prior narcotics offenses, see Information, and included as attachments the judgment of conviction or documents reflecting the charge and conviction, id., Att. A, B, C.

Graham bases his argument on the Supreme Court's decision in Johnson v. United States, 135 S.Ct. 2551 (2015), which invalidated the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e), as unconstitutionally vague. Motion at 30. The Court found that the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," Johnson, 135 S.Ct. at 2557, and that "[i]ncreasing a defendant's sentence under the clause denies due process of law," id.; see also id. at 2563 (holding that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.").

Johnson provides no basis for Graham's claim, however. As the Government points out, courts have rejected similar attempts to extend Johnson's holding to § 851. Opposition at 15-16

---

[7] Graham states that he "readily acknowledges in the alternative he could be enhanced for a 'prior conviction,' but nothing in § 851 defines prior convictions as a 'felony drug offense.'" Response at 18; see also Motion at 31.

(citing cases); see also, e.g., United States v. Dixon, Cr. No. 0:09-207-CMC, 2016 U.S. Dist. LEXIS 132226, at *7 (D.S.C. Sept. 27, 2016)("The Supreme Court's holding in Johnson has no effect on sentences pursuant to §§ 841 and 851."); King v. United States, Case No. 8:15-CV-2018-T-24MAP, 2016 U.S. Dist. LEXIS 17245, at *11 (M.D. Fla. Feb. 11, 2016)("Johnson does not apply to Petitioner's claim relating to ... his 20-year mandatory minimum sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851."). The Government concludes that "[a]s the sentencing enhancement in 21 U.S.C. § 851 contains no residual clause, it is entirely distinguishable from the residual clause deemed unconstitutionally vague in Johnson." Id. at 16.

The residual clause which the Supreme Court held unconstitutional in Johnson, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)((B)(ii), was included in the definition of "violent felony," see id. § 924(e)(2)(B). Section 851, especially when read in conjunction with 21 U.S.C. § 841(b), contains no similarly open-ended clause. While it is true, as Graham argues, that § 851 does not define "prior conviction," Motion at 29; Response at 18, the Information which the Government must file pursuant to § 851 requires that the Government "stat[e] in writing the previous convictions to be relied upon," 21 U.S.C. § 851(a)(1), thereby providing notice to the defendant. Nor does § 851 require an "indetermina[te] ... wide-ranging inquiry ...." Johnson, 135 S.Ct. at 2557. The fact of a prior conviction is easily verifiable, as the Government did in this case by filing supporting documents with the § 851 Information. The nature of the prior conviction is equally verifiable by reading the same documents. Moreover, one need look no further for a definition of "felony drug offense" than the definitions section of the same title. See 21 U.S.C. § 802(44) ("The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the Untied

States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances.").

Graham's <u>Johnson</u> argument is meritless and provides no basis for relief under § 2255.

      3.     <u>Alleyne</u> challenge

Graham next challenges the use of a "felony drug offense" in § 851 to increase the mandatory minimum sentence in his case. Motion at 31-32. According to Graham, the rule established by the United States Supreme Court in <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), requires that the fact of a "felony drug offense" must be found by the jury beyond a reasonable doubt. Id. at 32.

In <u>Alleyne</u>, the Supreme Court held that:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

133 S.Ct. at 2155 (citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000))(internal citations omitted).

The <u>Alleyne</u> Court, however, was careful to note what it did not hold:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

<u>Id.</u> at 2163; <u>see also</u> <u>United States v. Ramírez-Negrón</u>, 751 F.3d 42, 50 (1st Cir. 2014)(quoting <u>Alleyne</u>).

<u>Alleyne</u>, however, is not retroactively applicable to cases on collateral review. <u>Butterworth v. United States</u>, 775 F.3d 459, 461 (1st Cir. 2015)("Butterworth's appeal presents us with an issue of first impression for this circuit: whether the rule announced in <u>Alleyne</u> applies retroactively to sentences challenged on an initial petition for collateral review. We conclude that <u>Alleyne</u> does not

so apply."); id. at 468 ("We therefore conclude that the rule announced in Alleyne is not retroactively applicable to sentences on collateral review on an initial habeas petition."); Collymore v. United States, 151 F. Supp. 3d 235, 239-40 (D.R.I. 2015)(citing Butterworth). The First Circuit in Butterworth noted that it had previously decided that the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000),[8] "was not retroactively applicable on collateral review in Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003)." Butterworth, 775 F.3d at 465. The Butterworth court stated that "[o]ur analysis in Sepulveda informs, and arguably dictates, our decision here, and we now reach the same conclusion about retroactivity for Alleyne as we did for Apprendi."); see also id. at 467 ("The way in which Alleyne operated as a logical extension of Apprendi forecloses the possibility that we could have been correct in Sepulveda, yet find for Butterworth here. Unable to discern any difference between statutory maximums and mandatory minimums that is material for a retroactivity determination ..., we decline to depart from our analysis in Sepulveda."); Sepulveda, 330 F.3d at 63 ("We hold, without serious question, that Apprendi prescribes a new rule of criminal procedure, and that Teague does not permit inferior courts to apply the Apprendi rule retroactively to cases on collateral review.").

Even if Alleyne did apply retroactively to Graham's Motion, however, the Alleyne Court noted that it had previously recognized "a narrow exception to this general rule for the fact of a prior conviction," 133 S.Ct. at 2160 n.1 (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)), and declined to revisit that ruling, id. Therefore, despite Graham's assertion to the contrary, see Motion at 32-34, Almendarez-Torres remains good law, see Alleyne, 133 S.Ct. at 2160 n.1;

---

[8] Apprendi held that"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Carrigan, 724 F.3d at 51 n.4 ("In Alleyne, the Supreme Court stated that Almendarez-Torres v. United States remains good law.")(internal citation omitted) .

In Almendarez-Torres, the Supreme Court addressed a comparable argument:

Subsection (a) of 8 U.S.C. § 1326 defines a crime. It forbids an alien who once was deported to return to the United States without special permission, and it authorizes a prison term of up to, but no more than, two years. Subsection (b)(2) of the same section authorizes a prison term of up to, but no more than, 20 years for "any alien described" in subsection (a), if the initial "deportation was subsequent to a conviction for commission of an aggravated felony." The question before us is whether this latter provision defines a separate crime or simply authorizes an enhanced penalty. If the former, *i.e.*, if it constitutes a separate crime, then the Government must write an indictment that mentions the additional element, namely, a prior aggravated felony conviction. If the latter, *i.e.*, if the provision simply authorizes an enhanced sentence when an offender also has an earlier conviction, then the indictment need not mention that fact, for the fact of an earlier conviction is not an element of the present crime.

We conclude that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment.

523 U.S. at 226-27. Graham's argument that a "felony drug offense" is an "element" of the crime which must be submitted to the jury and found beyond a reasonable doubt before being used to enhance his sentence, Motion at 34, is similar to that made by Almandarez-Torres, *i.e.*, that a conviction of an "aggravated felony" was a separate crime which must be charged in the indictment and that, because it was not, the court could not sentence him to more than two years imprisonment, Almendarez-Torres, 523 U.S. at 227. Applying the reasoning of the Supreme Court in Almendarez-Torres to the instant case, it is clear that the § 851 information charging a prior conviction for a felony drug offense is a penalty provision, not a separate element, which need not be submitted to the jury.

Graham's claim that his prior conviction for a felony drug offense should not have been used

to enhance his sentence unless found by a jury beyond a reasonable doubt, thus, is foreclosed. Accordingly, the Court rejects his allegation that the Court engaged in "judicial fact-finding.

4.      21 U.S.C. § 846 as predicate drug offense

Finally, Graham contends that "under the Rule announced in Mathis, the crime of conspiracy pursuant to § 846 no longer qualifies as a prior conviction for a felony drug offense ... because such a crime lacks a categorical fit with the term 'felony drug conviction.'" Motion at 35.  Graham also compares the crime of conspiracy under 53a-48 of the Connecticut general statute with § 846, apparently to illustrate his claim that § 846 can no longer be considered a "felony drug offense." Id. at 36-38.  In addition, Graham makes the same argument discussed–and rejected–above, that the § 851 Information contains "elements" which must be submitted to the jury and proven beyond a reasonable doubt.  Response at 24.

Section 846 provides that: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  21 U.S.C. § 846.  Although Graham is correct that § 846 does not require the commission of an overt act, Motion at 35 (citing United States v. Shabani, 513 U.S. 10 (1994)), his premise that §4B1.1 does is incorrect. Application Note 1 to §4B1.2 states that "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, **conspiring**, and attempting to commit such offenses." U.S.S.G. §4B1.2, cmt. n.1 (bold added).  "Application notes are binding on the courts in their construction of the Sentencing Guidelines." United States v. Rivera-Constantino, 798 F.3d 900, 903 (9th Cir. 2015)(citation omitted).

Although Graham disputes the Government's reliance on Application Note 1, Response at

22-23, its language could not be more clear.  The note does not state that a controlled substance offense includes conspiracy to commit such offense plus an overt act.  Just as § 846 is not dependent on commission of an offense defined in the subchapter before imposition of the same penalty, so, too, the inclusion of conspiracy as a controlled substance offense under §4B1.2 is not dependent on the commission of the offense which was the object of the conspiracy.

Again in its Opposition the Government cites cases which have rejected the same, or similar arguments.  Opposition at 19.  In Rivera-Constantino, for example, the Ninth Circuit rejected the defendant's contention that his prior conspiracy conviction was not "encompassed by the word 'conspiring'" as used in the Guidelines.  798 F.3d at 903.  The court stated that the defendant's prior "conviction was for the crime of conspiracy to possess marijuana with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1)."  Id.  "This offense–like the overwhelming majority of federal conspiracy offenses–does not require proof of 'any overt acts in furtherance of the conspiracy.'" Id. (quoting Shabani, 513 U.S. at 15)(footnote omitted); see also United States v. Pascacio-Rodriguez, 749 F.3d 353 (5th Cir. 2014).  There, the Fifth Circuit noted that in United States v. Rodriguez-Escareno, 700 F.3d 751 (5th Cir. 2012), it had rejected defendant's argument that "because there was no overt-act requirement, a conspiracy under § 846 was not within the generic, contemporary meaning of 'conspiracy,'" and held that there was "no need to find meaning for the offense [of conspiracy] ... outside of the Guidelines." Pascacio-Rodriguez, 749 F.3d at 366 (internal quotation marks omitted). The Rodriguez-Escareno court explained that "to search for a generic meaning of 'conspiracy' by employing a doctrine generally used to determine whether a state conviction is of an enumerated crime, would only becloud what is clear from the Guideline itself."  700 F.3d at 754; see also Pascacio-Rodriguez, 749 F.3d at 366-67 (quoting Rodriguez-Escareno).  The court concluded that

the defendant was subject to the enhancement.   <u>Rodriguez-Escareno</u>, 700 F.3d at 755.[9]

Similarly, here, Graham was subject to the sentencing enhancement based on his prior conviction for conspiracy, a felony drug offense, pursuant to § 846.   Accordingly, Graham's last ground for relief is rejected.

<u>CONCLUSION</u>

Graham has not demonstrated, by a preponderance of the evidence, that he received ineffective assistance of counsel during the pre-trial stages of these proceedings, <u>see</u> <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993)(noting petitioner's "very heavy burden" to "demonstrate ineffective assistance by a preponderance of the evidence"), or that his sentence is unconstitutional in any way, <u>see</u> 28 U.S.C. § 2255(a).   For the foregoing reasons, the Motion is DENIED and DISMISSED.   Graham's request for appointment of counsel is also DENIED.

---

[9] The Government noted that it had only located one case, <u>United State v, Martinez-Cruz</u>, 836 F.3d 1305 (10th Cir. 2016), which utilized the categorical approach and held, also in an illegal reentry case, that "because there was no overt act requirement in 21 U.S.C. § 846, it did not qualify as a 'felony drug trafficking-offense[.]'" Opposition at 19 n.4.   The <u>Martinez-Cruz</u> court, however, recognized that its holding pitted it against its sister circuits.   836 F.3d at 1314.

RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts (§ 2255 Rules), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Graham has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Graham is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  <u>See</u>  § 2255 Rule 11(a).


SO  ORDERED:


/s/ Mary M. Lisi
Mary M. Lisi
Senior United States District Judge

Date: June 19, 2017